## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| THE WITTERN GROUP, INC.; FAWN ENGINEERING CORPORATION; and U-SELECT-IT CORPORATION, | ) ) ) ) | Law No. _____ |
| Plaintiffs, | ) ) | **PETITION** |
| v. | ) ) | **(JURY DEMANDED)** |
| CAL BAUER, HAO-JAN CHANG, personally and d/b/a ROSE STUDIOS, INC., an administratively closed corporation, and ROSE STUDIOS, INC. to the extent it is reactivated | ) ) ) ) ) ) | |
| Defendants. | | |

**COMES NOW** the Plaintiffs, THE WITTERN GROUP, INC.; FAWN ENGINEERING CORPORATION; and U-SELECT-IT CORPORATION, and for their causes of action against Defendants, allege as follows:

### PARTIES

1.      Plaintiff The Wittern Group, Inc. ("Wittern") is a corporation incorporated under the laws of the State of Iowa, with its principal place of business at 8040 University Boulevard, Clive, Iowa.

2.      Plaintiff Fawn Engineering Corporation ("Fawn"), an Iowa corporation with its principal place of business in Des Moines, Iowa.

3.      Plaintiff U-SELECT-IT Corporation ("U-SELECT-IT"), an Iowa corporation with its principal place of business in Des Moines, Iowa. Unless otherwise denoted by the context, reference to "Wittern Group" in this Petition refers to Wittern, Fawn, and U-SELECT-IT collectively.

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

4.      Upon information and belief, Rose Studios, Inc. ("Rose"), formerly a Washington Corporation with its principal place of business at 13400 NE 20th St., Suite 32, Bellevue, Washington was administratively closed on October 21, 2017, but its name is still used by Defendant Hao-Jan Chang.  It is also named a Defendant in this action in the event steps are taken by one or more of the individual Defendants to resurrect it as an active corporation, confirming all of its acts since its administrative closure.

5.      VendNovation, LLC ("VendNovation") is a limited liability company incorporated under the laws of the State of Washington, with its principal place of business at 14636 N.E. 95th Street, Redmond, Washington.  It has two members: Rose, which owned 80%; and Fawn, which owns 20%.  Wittern Group assumes with the administrative closure of Rose, its 80% interest in VendNovation has been owned by Defendant Han-Jan Chang from October 21, 2017 forward.

6.      Defendant Cal Bauer ("Bauer"), an individual, was the Vice President for Marketing, now is the Chief Operating Officer for VendNovation and is domiciled in the State of Washington.

7.      Upon information and belief, Defendant Hao-Jan Chang ("Chang"), an individual, is Chief Executive Officer of VendNovation, the Manager of VendNovation, and domiciled in the State of Washington and has been and continues to be a member of the VendNovation Board of Directors (the "Board").

## JURISDICTION AND VENUE

8.      The amount in controversy exceeds the jurisdictional minimum necessary to maintain this action in this court.

9.      Venue is proper under Iowa Code § 617 and pursuant to the terms of sale under the Purchase Orders used by Wittern in doing business with VendNovation.  Venue is also

proper in this Court because the actions of the Defendants have been directed at Iowa citizens, breach in part of written contracts providing Iowa is the venue, and the injury or damage to Wittern Group will be sustained in Polk County.

## FACTUAL BACKGROUND

10.     The Wittern Group provides goods and services related to controlled dispensing, automatic merchandising, and vending, a business in which it has been involved since its founder, F.A. Wittern, started on the East side of Des Moines in 1931.

11.     As a part of its current business, the Wittern Group makes and sells automated dispensing equipment that incorporates circuit boards or computers currently programmed and provided by VendNovation. These circuit boards and computers enable the equipment to communicate with cloud-based software provided by VendNovation to the end-users of the equipment.

12.     VendNovation was formed on January 6, 2011, with the Wittern Group participating by way of a cash infusion by Fawn Engineering Corp. totaling $1,588,113, over a period of five years. The decision by Fawn to join VendNovation was based on the agreements entered into at the time with Defendants, the representation that those agreements between the parties would continue into the future, and the reasonable expectation that VendNovation would maintain the corporate formalities, that Wittern would be kept fully informed of material developments in VendNovation's business, and that Wittern would participate in VendNovation's governance and financial growth.

13.     Prior to the formation of VendNovation the necessary circuit boards or computers and the programming were provided to the Wittern Group by Defendant Chang through Rose.

14.     Wittern Group was convinced to join with Rose in the formation of VendNovation based on information from Bauer that indicated a significant cash infusion was

immediately necessary to maintain ongoing production of the hardware and software services Wittern Group had been receiving, and to allow development of capacity needed to serve existing and future customers.

15.     Bauer was then employed by Rose and was acting at the direction of, with the consent of Chang and for the benefit of Rose and Chang.

16.     Wittern Group reasonably believed Bauer was being honest and acted in reliance on his representations, in reliance on the fact that the prior business arrangements would be maintained in the future if the cash infusions were made and in reliance on the commitment to maintain the appropriate corporate formalities, that Wittern Group would be kept fully informed of material developments in the business, and that it would participate in the financial success of the business.  Wittern Group was reasonable in doing so.

17.     Fawn and Rose made and entered into an Operating Agreement, effective January 10, 2011 (the "Operating Agreement"), governing the operation of VendNovation.  Bauer, directly, and Chang, at least implicitly, represented that as a member of VendNovation, Fawn would be kept informed and allowed to participate in VendNovation as provided in the Operating Agreement.

18.     To Plaintiffs' knowledge, no votes have yet been taken by the Board of Directors.

19.     Section 5.9.1 of the Operating Agreement requires Board approval for a number of actions or decisions, including but not limited to "(l) Compensation of the Manager."

20.      Upon information and belief, Chang has been receiving compensation as Manager without approval from the Board of Directors.

21.     Section 16.2 of the Operating Agreement states "[VendNovation] agrees that it will make its products and services available to Fawn Engineering Corporation, and its affiliates,

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

for purchase at [VendNovation's] regular prices and rates without regard to whether Fawn Engineering Corporation, or an affiliate is a Member of [VendNovation]."

22.     Since 2011, Wittern Group companies have purchased the circuit boards programmed and provided by VendNovation and incorporated those boards into its products.

23.     This purchase is and has been controlled by a Wittern Group Purchase Order, which notes, in part, "[a]ll disputes arising directly or indirectly out of this Purchase Order shall be governed by Iowa law, and any actions to enforce this agreement may be commenced in the District Court of the State of Iowa, in and for Polk County. Seller hereby consents to the jurisdiction of said Court over the person of the Seller, its officers and directors, and agrees that service of process as provided by Iowa law for non-resident individuals or corporations deemed to be doing business in Iowa shall be sufficient."

24.     Wittern Group and VendNovation have been operating for the nearly 9 years since the formation of VendNovation under an oral agreement that addressed pricing terms and license fee sharing as follows:

     a.     VendNovation would provide the pre-programmed hardware necessary to enable the back-end software used by customers of Wittern Group;

     b.     Wittern Group would integrate VendNovation's hardware and software enablement into Wittern Group's vending machines, and would manufacture, market, and sell such equipment to Wittern Group customers;

     c.     VendNovation would be paid directly for the hardware when Wittern Group purchased it from VendNovation outright;

     d.     For the software, Wittern Group would include in the sale a licensing fee, collected at the time of sale or in periodic installments, and Wittern Group would in turn remit a percentage of the collections to VendNovation as its software licensing fee; and

E-FILED  2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

25.     The Oral Agreement between Wittern Group and VendNovation generally mirrored in all significant respects the prior oral arrangement between Wittern Group and Rose and Chang which existed from 2008 until 2011.

26.     During the last several years, Wittern Group has manufactured "ScrubTrak" machines for use in the health care industry to dispense and track surgical scrubs.  ScrubTrak machines incorporate the VendNovation-supplied hardware and utilize the VendNovation software on the terms described in paragraph 24, above.

27.     VendNovation has not previously charged Wittern Group a fee for provisioning any of its computers or other hardware and has instead always included this service in the hardware purchase price.

28.     Of the 1,079 computers and circuit boards Wittern Group has purchased from VendNovation over the past 4 years, Wittern Group has never been charged a provisioning fee.

29.     Wittern Group has purchased 86 computers from VendNovation for use in ScrubTrak machines without a provisioning fee ever being paid.

30.     There are currently 71 ScrubTrak machines in process at Wittern Group's facility that are being built with promised delivery dates—many of which have been built and are ready to be provisioned, and the rest of which will need provisioning at a later date.

31.     Without provisioning, Wittern Group's machines are essentially worthless.

32.     Bauer, acting in his capacity as an officer of VendNovation, had demanded payment of a portion of Wittern's hardware sales margin, even though there was a lack of common understanding between the parties about the determination of that margin.  When Wittern refused to agree to make those payments, Bauer said that he would refuse to provision

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

any of Wittern Group's machines unless Wittern Group paid VendNovation an additional $3,000 per machine to make up for his perceived loss of hardware sales revenue.

33.     In 2016, Bauer began efforts to convince Wittern Group to buy the 80% of VendNovation then owned by Rose for an undefined sum in excess of $10,000,000.

34.     Although Wittern Group tried to engage in standard due diligence with Bauer which would allow it to arrive at a reasonable valuation of VendNovation it was unable to do so and, therefore, was not able to make an offer for that interest.

35.     In June, 2019, Bauer set a "bottom line" demand of $10,000,000 which he demanded Wittern Group pay for the 80% interest in VendNovation and threatened "War" if that sum was not paid.

36.     Bauer, acting in his capacity as an officer of VendNovation, has now informed The Wittern Group that its rights to continue to collect payments from customers for software on Wittern Group's machines are terminated, and that going forward, such payments will be collected by VendNovation rather than by Wittern Group.  A copy of the letter is attached hereto as Exhibit 1 ("the November 11 letter").

37.     Bauer, acting in his capacity as an officer of VendNovation, has specifically told Wittern Group that he plans to advise all of Wittern Group's vending machine customers utilizing VendNovation software that "Wittern Group may no longer distribute or bill for VendNovation Software" and that "[a]ll funds will be collected by VendNovation, and VendNovation alone will determine any split of such collections."  A letter conveying this threat was sent to The Wittern Group on or about October 22, 2019, along with a copy of the lawsuit that VendNovation had filed against Wittern Group that day ("the October 22 letter").  A copy of that letter is attached hereto as Exhibit 2.

38.     On multiple occasions prior to sending the November 11 letter Bauer, acting in his capacity as an officer of VendNovation, has contacted Wittern Group's customers seeking billing address information and conveying his intent to cause the termination of Wittern Group's right to distribute VendNovation software on December 31, 2019.

39.     Bauer contacted Wittern Group sales representative Emily Fisher and requested the name of a contact at BoundTree, a distributor that purchases for resale the majority of the EMS-related machines sold by Wittern Group, so that Bauer, acting in his capacity as an officer of VendNovation, could notify them that VendNovation would be collecting the software license fees.

40.     On Sunday, October 27, 2019, VendNovation, acting at Bauer's direction sent USI a letter indicating that it had informed BoundTree that BoundTree should no longer expect VendNovation's software, which is incorporated into USI products distributed by BoundTree, to be operational unless BoundTree enters into a new agreement with VendNovation.

41.     On November 10, 2019, Bauer contacted Wittern Group employees to distribute a Court Order denying Wittern Group's efforts to enjoin his actions in an effort to convince those employees to leave Wittern Group.

42.     On November 11, 2019, Bauer sent the letter attached as Exhibit 1 to the Wittern Group, among other things, revoking the prior billing arrangements which had been in place since 2008.

## COUNT 1 – (AGAINST CAL BAUER) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

43.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

E-FILED  2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

44.    Wittern Group had valid contractual arrangements with VendNovation with which Defendant Bauer has interfered in an effort to try to force Wittern Group to purchase the 80% of VendNovation it does not own so Bauer can obtain a big payday.

45.    Wittern Group has entered into valid contractual relationships with each of its customers under the terms of which customers purchase Wittern Group's vending machines and pay for the use thereof.

46.    Bauer is aware of the existence of contractual relationships between Wittern Group and Wittern Group's customers.

47.    Bauer has intentionally interfered with some of these contractual relationships by contacting Wittern Group's customers and actively threatening to shut down access to web-based software necessary to operate Wittern Group's vending machines, claiming that Wittern Group may no longer distribute or bill for VendNovation software, and demanding that all license fees for VendNovation software be paid to VendNovation.

48.    Bauer's communications are inducing a breach or termination of customers' contractual relationship with Wittern Group by persuading and influencing such customers, at the very least, not to  continue to do business with Wittern Group.

49.    Bauer has also contacted certain Wittern Group employees in an effort to interfere with their employment contracts with the Wittern Group.

50.    Bauer's interference is for improper purposes as previously alleged.

51.    Wittern Group is entitled to an award of compensatory damages as a result of Bauer's tortious interference with Wittern Group's contractual relationships in an amount to be established at trial, along with interest at the maximum rate permitted at law, punitive damages

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

to deter such conduct in the future, court costs and such further relief as the Court may find proper.

### COUNT 2 – (AGAINST CHANG AND ROSE) BREACH OF FIDUCIARY DUTY

52.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

53.     Rose, as the Member of VendNovation with an 80% interest, owed a fiduciary duty to Fawn which owns a 20% interest to be sure it is treated fairly within the entity arrangement. To the extent the administrative closure of Rose on October 21, 2017, resulted in its assets, including its 80% ownership of interest in VendNovation passing to Defendant Chang, the fiduciary duty passed to Defendant Chang.

54.     Defendants Rose and/or Chang individually, or by and through Rose, has breached that duty by permitting, encouraging and/or aiding and abetting Bauer in his efforts to try to force Wittern Group to purchase the interest Rose owned in VendNovation.

55.     Defendants Rose and/or Chang individually, or by and through Rose, in addition, has breached that duty by permitting, encouraging and/or aiding and abetting Bauer in his efforts to interfere with the contracts Wittern Group has with its customers and with its employees.

56.     Defendants Rose and/or Chang individually, or by and through Rose, has breached that duty by running VendNovation without maintaining standard corporate formalities, or consulting with or informing the minority member as is required under the Operating Agreement.

57.     Defendants Rose and/or Chang individually, or by and through Rose, has breached that duty by depriving the Wittern Group of the benefits it reasonably anticipated when it made the substantial financial investment needed in 2011 to keep the business alive.

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

58.     The damages that Wittern Group has incurred and will incur are unique to it, arise from the relationship it had with Chang and Rose before the formation of VendNovation and are not the same as damages which might be experienced by VendNovation.

59.     Wittern Group is entitled to an award of compensatory damages as a result of Defendant's breach of fiduciary duty in an amount to be established at trial, along with interest at the maximum rate permitted at law, punitive damages to deter such conduct in the future, court costs and such further relief as the Court may find proper.

### COUNT 3- (AGAINST ALL DEFENDANTS) INTERFERENCE WITH THE OPERATING AGREEMENT

60.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

61.     The Operating Agreement is a binding and enforceable contract among and between Defendants Chang and/or Rose and Fawn, and is supported by consideration.

62.     The Operating Agreement requires the Manager's compensation be approved by the Board of Directors and requires that the members be informed about and consulted on a number of listed matters.

63.     As a Member, Fawn has not voted or been provided with notice of a meeting at which the Manager's compensation has been the subject of a vote and has not been informed or consulted as required in the Operating Agreement.

64.     The Operating Agreement requires that VendNovation make its products and services available to Fawn and Fawn's affiliates for purchase at VendNovation's regular prices and rates.

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

65.     As evidenced by the course of performance between the parties over the last several years, VendNovation's "regular prices and rates" do not include an upfront provisioning fee.

66.     By requiring Wittern Group to pay a $3,000 upfront provisioning fee in contravention of its regular pricing and rates, the Defendants have acted to interfere with the Operating Agreement.

67.     Further, Defendants have caused VendNovation to unilaterally decide not to make its products and services available for purchase going forward, instead choosing only to license Wittern Group's end users, in direct conflict with Section 16.2.

68.     Wittern Group is entitled to an award of damages, jointly and severally, as a result of the interference of the Operating Agreement in an amount to be established at trial, with interest at the maximum rate permitted by law, court costs and such further relief as the Court may deem just.

## COUNT 4 –(ALL DEFENDANTS) BREACH OF CONTRACT (ORAL AGREEMENT)

69.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

70.     The Oral Agreement between VendNovation and Wittern Group is a valid and enforceable contract supported by consideration, the terms of which are identified in Paragraph 24 above.

71.     Included in the Oral Agreement are the requirements that VendNovation provide Wittern Group component hardware and ongoing cloud-based software for use in Wittern Group's vending machines, that Wittern Group collect, and thereafter share a portion of, licensing fees owed to VendNovation for use of the software, and that VendNovation and Wittern Group deal exclusively with one another in markets the parties service together.

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

72.     The Defendants have interfered with and created a material breach and repudiation of the Oral Agreement by VendNovation's refusal to provision Wittern Group's machines not yet in the field, threatening to cut off customers' access to the cloud-based software for machines already in the field, communicating and/or threatening to communicate to Wittern Group's customers that only VendNovation may collect the software licensing fees and determine whether and what percentage of said fees would be paid to Wittern Group, and refusing to continue to supply component hardware to Wittern Group unless Wittern Group pays what ultimately amounts to a Ten Million Dollar ($10,000,000) or greater ransom.

73.     Wittern Group has been, and will continue to be, injured by the interference, as Wittern Group has relied upon the terms of the Oral Agreement and the corresponding course of performance and course of dealing of the parties over the last several years in designing and manufacturing specialized equipment that includes, or will need to include in the near future, hardware that is provided and provisioned by VendNovation and utilizes ongoing access to VendNovation's cloud-based software.

74.     Due to the interference with the Oral Agreement, Wittern Group has suffered damages, including but not limited to the costs related to all machines Wittern Group has manufactured, or are manufacturing that have not been provisioned, in an amount to be determined at trial and is entitled to an award of compensatory damages, jointly and severally against all the Defendants, with interest at the maximum rate permitted at law, costs and such further relief as the Court may deem just.

### COUNT 5 – (ALL DEFENDANTS) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

75.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

76.     Wittern Group has entered into valid contractual relationships with each of its customers under the terms of which the customers purchase Wittern Group's vending machines and pay for the use thereof.

77.     Defendants are aware of the existence of contractual relationships between Wittern Group and Wittern Group's customers.

78.     Defendants have intentionally interfered with some of these contractual relationships by contacting Wittern Group's customers and actively threatening to terminate Wittern Group's ability to distribute or bill for VendNovation software, and demanding that all license fees for VendNovation software be paid to VendNovation.

79.     Defendants' communications are inducing a breach or termination of customers' contractual relationship with Wittern Group by attempting to influence such customers, at the very least, not to honor their payment obligations to Wittern Group, and by creating doubt in the customers as to Wittern Group's ability to continue to be a reliable supplier of equipment they have purchased from Wittern Group for over a decade.  Such communications also threaten to diminish the value of Wittern Group's finance portfolio, as they may cause current finance or lease customers not to continue or renew existing contracts.

80.     Defendants' interference is for improper purposes, including a hostile takeover of Wittern Group's customers, misappropriation and/or evisceration of Wittern Group's business goodwill, and termination of Wittern Group's reputation as a provider of vending machines unless Wittern Group pays a ransom of Ten Million Dollars ($10,000,000) or more to purchase the remaining 80% of VendNovation and afford Bauer a big payday.

81.     Wittern Group is entitled to an award of compensatory damages, jointly and severally against all the Defendants, as a result of Defendants' tortious interference with Wittern

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

Group's contractual relationships in an amount to be established at trial, along with interest at the maximum rate permitted at law, punitive damages to deter such conduct in the future, court costs and such further relief as the Court may find proper.

## COUNT 6 – (ALL DEFENDANTS) TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES

82.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

83.     Wittern Group makes and sells vending machines that are designed for customers' specifications and incorporate VendNovation hardware and software.

84.     The functionality of Wittern Group's machines incorporating VendNovation hardware and software depends upon the operationality of such hardware and software.

85.     Wittern Group started manufacturing the 71 vending machines currently at their facility with the business expectancy of being able to provide functioning products to customers at a specified price, and in return for a specified dollar figure.

86.     Having sold the incorporated hardware to Wittern Group and thereafter refusing to provision the corresponding software, Defendants are aware of some, if not all, of the non-functioning machines and Wittern Group's business expectancies related thereto.

87.     By refusing to provision machines that are ready or nearly ready for delivery to customers, Defendants are intentionally interfering with Wittern Group's business expectancies and forcing Wittern Group to forego such expectancies.

88.     Defendants' interference is for improper purposes, including a hostile takeover of Wittern Group's customers, misappropriation of and/or evisceration of Wittern Group's business goodwill, and termination of Wittern Group's reputation as a provider of vending machines, all

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

with the goal of forcing Wittern Group to purchase the remaining 80% of VendNovation for a sum of Ten Million Dollars ($10,000,000) or more.

89.     Wittern Group is damaged by Defendants' refusal to provision machines that are ready or nearly ready for delivery to customers, as it precludes the completion and delivery of promised products, precludes Wittern Group from being paid for work and materials that have already been expended, and causes customers to question whether they can rely on Wittern Group to provide timely delivery of working products.

90.     Wittern Group is entitled to an award of compensatory damages as a result of Defendants' tortious interference with Wittern Group's contractual relationships in an amount to be established at trial, along with interest at the maximum rate permitted at law, punitive damages to deter such conduct in the future and such further relief as the Court may find proper.

### COUNT 7– (ALL DEFENDANTS) CONSPIRACY/AIDING AND ABETTING

91.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

92.     The Defendants have been acting in concert in an effort to unlawfully pressure Wittern Group to purchase VendNovation for sums well in excess of its value or to pay fees and charges well in excess of those VendNovation was contractually bound to offer.

93.     The Defendants also have been acting in concert in the breach of fiduciary duty as outlined above which has deprived the Wittern Group of its reasonable expectations in connection with its substantial investment in VendNovation.

94.     Wittern Group has been and will continue to be damaged by the Defendant's unlawful activity.

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

95.     Wittern Group is entitled to an award of compensatory damages in an amount to be established at trial, along with interest at the maximum rate permitted at law, punitive damages to deter such conduct in the future and such further relief as the Court may find proper.

## COUNT 6 – (ALL DEFENDANTS) UNFAIR COMPETITION

96.     Wittern Group incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Petition.

97.     The improper conduct of Defendants spelled out in this Petition, constitutes unfair competition under the law.

98.     Defendants' unfair methods of competition have occurred in the course of trade or commerce and have had an impact on the public interest.

99.     Wittern Group has been, and will continue to be, injured in their business by Defendants' unfair methods of competition, as Wittern Group is, among other things, unable to be paid for work and materials that have already been expended, is subject to reputational harm at the hands of Defendants' improper interference with Wittern Group's customer relationships, loss of current and future business and other losses as have been previously alleged.

100.    The injury suffered by Wittern Group has been, and continues to be, caused by Defendants' unfair methods of competition.

101.    Wittern Group is entitled to an award of compensatory damages as a result of Defendants' unfair competition in an amount to be established at trial with interest at the maximum rate permitted, punitive damages to deter such conduct in the future, court costs and such further relief as may be found just.

## PRAYER FOR RELIEF

WHEREFORE, Wittern Group requests entry of judgment in its favor and against the Defendants, jointly and severally, as follows:

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT

A.      That the Court enter judgment awarding compensatory damages in favor of Wittern Group in an amount to be proven at trial with interest at the maximum rate permitted by law;

B.      That the Court issue an order enjoining the Defendants from continuing to engage in the conduct alleged herein;

C.      That the Court award attorneys' fees, court costs, and other disbursements against the Defendants pursuant to any recognized ground at law or in equity;

D.      Wittern Group is entitled to an award of punitive damages against each of the Defendants to deter such conduct in the future; and,

E.      That the Court award such other relief that it may deem just and proper.

### JURY DEMAND

Plaintiffs demand a jury trial on all issues triable by jury.

David L. Charles                                        AT0001440

666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 283-4666
Facsimile: (515) 558-0658
E-mail:  dcharles@davidcharleslaw.com

or

2722 3rd Ave. N. Suite 400
Billings, MT 59101
Telephone:  (406) 545-5277
Facsimile: (515) 558-0658
E-mail:  dcharles@davidcharleslaw.com

ATTORNEYS FOR PLAINTIFFS THE WITTERN GROUP, INC.; FAWN ENGINEERING CORPORATION; and U-SELECT-IT CORPORATION

C0638\0051\(3405749)

November 11, 2019

Via email and regular mail

Heidi Chico, CEO
Chip Wittern, President
The Wittern Group
8040 University Blvd
Clive, IA 50325

Dear Heid and Chip:

As you know, on Friday, November 8, 2019, the court issued its order denying the preliminary injunctive relief sought by the Wittern Group. A copy of the order was sent to your counsel. In case Wittern Group has not received it, a copy is enclosed. This letter confirms the following VendNovation actions in accordance with the court order.

1.      Effective immediately, consistent with VendNovation's prior communication to Wittern Group when it filed the original complaint in Case No. 19-2-27854-4 SEA in King County Superior Court, Wittern Group's authorization to act as billing agent for VendNovation is revoked. Wittern Group no longer has any right to do, and must cease (i) all billing for any new software licenses for VendNovation software connected to any and all Wittern Group vending machines, and (ii) all billing for all existing VendNovation software subscriptions used in connection with any and all Wittern Group vending machines for which Wittern Group previously has billed on behalf of VendNovation.

2.      Effective immediately, please be advised that VendNovation alone shall perform all billing of VendNovation software connected to all Wittern Group vending machines. This includes all new software licenses for machines shipped by Wittern Group after November 8, 2019, and all software license renewals for software on machines already shipped prior to November 8, 2019.

3.      We understand that Wittern Group has raised concerns about billing for VendNovation software services that are used in connection with leased or self-financed Wittern Group machines. Effective immediately, for VendNovation software licenses activated after November 8, 2019, on Witten Group leased or self-financed machines shipped after this date, VendNovation shall do all billing directly to the end user.   Wittern Group will need to advise VendNovation of any such new lessee contact information. Wittern Group no longer has the right to, and shall not, do any billing for VendNovation's software for the Wittern Group vending machines which Wittern Group leases or self-finances after November 8, 2019.

4.   Effective immediately, for all existing software licenses and renewals of software licenses on vending machines which Wittern Group has leased or self-financed on or before November 8, 2019, Wittern Group may continue to do the software billing and collection through the end of the current lease term. VendNovation will bill Wittern Group for the software license



portion of the current lease term on a monthly basis through the end of such current lease term. Following the current lease term, VendNovation will do all such billing directly to the lessees on a monthly basis or otherwise, as VendNovation determines with the lessee. Wittern Group will have no right to include a renewal of the software license after the current lease term without VendNovation's express prior written permission.  Absent same, no lease renewal will include any VendNovation software license for the machine's lease renewal term.  For existing Wittern Group machines that have been leased by third parties and for which Wittern Group has bundled the VendNovation software together with the lease machine pricing (i.e., not separating the software and hardware pricing but charging instead a monthly or other periodic lease price), VendNovation will work with Wittern Group on the VendNovation software billing to ensure a smooth transition and to ensure that all existing lessees will be billed only by one party for the software. To accomplish this and avoid disruption, please provide a list for all current leased machines and lease terms, including their locations and customer contact information.

5.    With respect to any purchase orders for ScrubTrak computers received by VendNovation after November 8, 2019, please be advised that we are ready, willing and able to satisfy all future orders for the ScrubTrak computer components that are ordered from VendNovation at the "regular price" of $3,000 as determined pursuant to the November 8, 2019 court order. As you know, no such orders are currently pending. To the extent you wish us to fulfill any orders, please send us a purchase order specifying quantities at the $3,000 purchase price at your earliest convenience. We have computers in stock and are prepared to ship same to you promptly upon your compliance with these standard terms

Very truly yours

Cal Bauer
Vice President of Marketing

VendNovation LLC
14636 NE 95th
Redmond WA 98052

Encl: Case No. 19-2-27854-4 SEA Findings of Fact, Conclusions of Law, and Order Denying Wittern Group's Motion for a Preliminary Injunction

cc:    Peter A. Talevich, Jerrold F. Petruzzelli

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT



EXHIBIT
2

October 22, 2019

Heidi Chico
Chief Executive Officer, Wittern Group
Via Email: HChico@witterngroup.com

Dear Heidi:

Since early 2017, Wittern Group and VendNovation have worked at the request of Wittern Group to document in writing the parties' existing contract. This has been done at the request of Wittern Group's attorneys and accountants. VendNovation has worked with Wittern Group in good faith to preserve the terms of the parties' existing business arrangement. After many months of Wittern Group's efforts to change the agreement, it is now clear that Wittern Group has not been bargaining similarly as it plainly wants to do more than document the existing agreement. Instead, Wittern Group has sought to impose new terms that benefit Wittern Group and harm VendNovation.

Despite our best efforts to document the existing arrangement, Wittern Group has made clear that it seeks to impose a new set of agreements to VendNovation's disadvantage. Although VendNovation has warned repeatedly of the negative effect Wittern Group's proposal will have on VendNovation's business, Wittern Group has simply not listened or has run roughshod over those concerns. For example, Wittern Group wishes to abandon the exclusive dealing provisions on which the parties' contract was originally premised and instead make exclusivity operate one way—in favor of Wittern Group. Wittern Group insists on its freedom to deal with other software vendors while barring VendNovation from providing software to other vending machine manufacturers. This is the opposite of the original agreement. At the same time, Wittern Group is developing competing software to that of VendNovation, including by improperly using Wittern Group employees' ability to access VendNovation's software. That this is occurring while you personally sit as a VendNovation board member and actively negotiate the interests of Wittern Group against those of VendNovation in the contract negotiations is mystifying. It is an egregious breach of your fiduciary duties as a Board member to VendNovation.

In our negotiations, Wittern Group has even unilaterally repudiated that part of the parties' agreement to share ScrubTrak machine gross margins on the pretext that because current management no longer approved that arrangement, the ScrubTrak agreement was to be rewritten to its liking.

Continuing contract negotiations under these circumstances no longer serves VendNovation's interests. To obtain compensation for such conduct and halt further damages, VendNovation has

E-FILED 2019 NOV 26 10:54 AM POLK - CLERK OF DISTRICT COURT



filed the attached complaint in the King County (Washington) Superior Court against Wittern Group, U-SELECT-IT, Fawn Engineering Corp., and you individually. The defendants named in this complaint are being served copies today.

Please be further advised that since Wittern Group has decided that it will not comply with the existing agreement and has breached the agreement, we have no choice but to terminate that agreement. Effective immediately, please be advised that Wittern Group's rights under our existing oral agreement have terminated. Wittern Group now has no rights to distribute VendNovation Software or collect funds related to VendNovation Software. Effective immediately, and in order to protect all of our intellectual property rights, we are re-assuming all distribution and billing rights for the VendNovation Software. Wittern Group may no longer distribute or bill for VendNovation Software. We will be advising all vending machine customers utilizing VendNovation Software accordingly. All funds will be collected by VendNovation, and VendNovation alone will determine any split of such collections.

We regret having to resort to litigation and doing so was not our first choice. We remain willing to reach a business resolution that will put an early end to litigation. We continue to believe such an agreement would benefit both companies. While we have made our position clear in the past several months, we reiterate that an agreement would require at minimum:

- Wittern Group's immediate payment of the owed gross revenues share from the sale of ScrubTrak machines that have shipped to date, and its honoring the gross revenue spilt for ScrubTrak machines that ship in the future.

- Wittern Group's commitment not to utilize competing software in common markets, and to cease and desist its apparent efforts to replicate VendNovation's software to replace it.

- A billing arrangement for VendNovation Software that more accurately reflects the parties' relative contributions for the service being offered.

VendNovation reserves all rights in this matter.

Sincerely,

Cal Bauer

Vice President Marketing

cc: Art Wittern, Chip Wittern, Dan Jacobi

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| THE WITTERN GROUP, INC.; FAWN ENGINEERING CORPORATION; and U-SELECT-IT CORPORATION, <br><br>    Plaintiffs, <br><br> v. <br><br> CAL BAUER, and HAO-JAN CHANG, personally and d/b/a ROSE STUDIOS, INC, a now administratively closed corporation, <br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Law <br><br> Equity     No. _____ <br><br> Date Petition Filed: _____ <br><br> **ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANTS:

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendants in this action. A copy of the petition (and any documents filed with it) is attached to this notice. The name and address(es) of the attorney for the plaintiffs is David L. Charles, 666 Walnut Street, Suite 2000, Des Moines, Iowa 50309, or 2722 3rd Ave. N. Suite 400, Billings, MT 59101. The attorney's phone numbers are (515) 283-4666, and (406) 545-5277; facsimile number is (515) 558-0658.

You are further notified that the above case has been filed in a county that utilizes electronic filing.  Unless, within 20 days after service of this original notice upon you, you serve, and within a reasonable time thereafter file a motion or answer, in the Iowa District Court for Polk County, at the courthouse in Des Moines, Iowa, judgment by default will be rendered against you for the relief demanded in the petition. Please see Iowa Court Rules Chapter 16 for information on electronic filing and Iowa Court Rules Chapter 16, division VI regarding the protection of personal information in court filings.

If you need assistance to participate in court due to a disability, contact the disability coordinator at: (515) 286-3394. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

                     Polk County Clerk of Court
                     Polk County Courthouse
                     Des Moines, Iowa 50309

**IMPORTANT:**  YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS

E-FILED  2019 NOV 26 3:03 PM POLK - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.*  LACL146431

*County*  Polk

*Case Title*  THE WITTERN GROUP INC ET AL VS CAL BAUER ET AL

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(515) 286-3394**   . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*  11/26/2019 03:03:51 PM



*District Clerk of*  Polk               *County*

/s/ Valerie Morgan

## In The Iowa District Court for Polk County

| | | |
|---|---|---|
| **The Wittern Group, Inc.; Fawn Engineering Corporation; and U-Select-It Corporation,** | ) ) ) ) | Law No. LACL146431 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **Acceptance of Service** |
| **Cal Bauer, Hao-Jan Chang**, personally and d/b/a Rose Studios, Inc., an administratively closed corporation, and **Rose Studios, Inc.** to the extent it is reactivated | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

The undersigned Michael A. Giudicessi of the Faegre Baker Daniels LLP law firm states that he is authorized to and does accept service of process of the Petition on behalf of Defendants Cal Bauer; Hao-Jan Chang, personally and d/b/a Rose Studios, Inc.; and Rose Studios, Inc, to the extent it is reactivated, effective as of December 9, 2019, as agreed between counsel for the parties.

This acceptance is made with the understanding that Defendant will keep all defenses, objections, and challenges by pre-answer motion or otherwise to the lawsuit, the court's jurisdiction, and the venue of the action, with this acceptance serving only as a waiver of objections to the absence of an Original Notice or of personal service.

Dated this 18th day of December, 2019.

By: _____

Michael A. Giudicessi
FAEGRE BAKER DANIELS LLP
801 Grand Avenue - 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: 515-447-4701 / Facsimile: 515-248-9010
Email: Michael.Giudicessi@FaegreBD.com
**Attorney for Defendants**

- 1 -

US.125963040.01